Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREG EDDY,<br><br>                             Plaintiff,<br><br>                   vs.<br><br>COLUMBIA CARE INC., MICHAEL ABBOTT, NICHOLAS VITA, JEFF CLARKE, JULIE HILL, JAMES A.C. KENNEDY, JONATHAN P. MAY, FRANK SAVAGE, ALISON WORTHINGTON, and PHILIP GOLDBERG,<br><br>                             Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Greg Eddy ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against Columbia Care Inc. ("Columbia Care" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), Cresco Labs Inc. ( "Cresco" and collectively with the Company and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Parent as a

result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 23, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Columbia Care will become an indirect wholly-owned subsidiary of Cresco. Columbia Care public stockholders will receive, in exchange for each share of Columbia Care stock, 0.5579 shares of Cresco Common Stock.

3.      Thereafter, on May 2, 2022, Columbia Care filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement Statement") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair for a number of other reasons.  Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" without explanation as to whether the Special Transaction Committee that was formed was comprised solely of independent and disinterested directors. Further, no disclosure was given as to the powers given to the board with regard to the proposed transaction, and whether the board was empowered to veto the transaction.

5.      In addition, no adequate explanation was given as to why the Board engaged multiple financial advisors.

6.      Moreover, the Preliminary Proxy Statement does not provide adequate reasoning as to why the Board agreed to a deal with no protective collar mechanism to ensure the all-stock merger consideration would remain in a realm of reasonableness, irrespective of Cresco's stock price on the day the deal closes.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with

no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.      In violation of the Exchange Act, on May 2, 2022, Defendants caused to be filed the materially deficient Preliminary Proxy Statement.  The Preliminary Proxy Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Columbia Care and Cresco, provided by Columbia Care and Cresco management to the Board's financial advisors ATB Capital Markets Inc. ("ATB") and Cresco's financial advisor Canaccord Genuity Corp. ("Canaccord"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by ATB and/or Canaccord and provided to the Company and the Board.

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

10.     Plaintiff is a citizen of Colorado and, at all times relevant hereto, has been a Columbia Care stockholder.

11.     Defendant Columbia Care cultivates, manufactures, and provides cannabis-based health and wellness solutions, and derivative products. Columbia Care is incorporated under the laws of British Columbia and has its principal place of business at 680 Fifth Ave., 24th Floor, New York, New York.  Shares of Columbia Care common stock are traded on the Nasdaq under the symbol "CCHW".

12.     Defendant Nicholas Vita ("Vita") has been a Director of the Company at all relevant times.  In addition, Vita serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Michael Abbott ("Abbot") has been a director of the Company at all relevant times.

14.     Defendant Jeff Clarke ("Clarke") has been a director of the Company at all relevant times.

15.     Defendant James A.C. Kennedy ("Kennedy") has been a director of the Company at all relevant times.

16.     Defendant Julie Hill ("Hill") has been a director of the Company at all relevant times.

17.     Defendant Jonathan P. May ("May") has been a director of the Company at all relevant times.

18.     Defendant Frank Savage ("Savage") has been a director of the Company at all relevant times.

19.     Defendant Alison Worthington ("Worthington") has been a director of the Company at all relevant times.

20.     Defendant Phillip Goldberg ("Goldberg") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 12 - 20 are collectively referred to as the "Individual Defendants."

22.     Defendant Parent cultivates, manufactures, and sells retail and medical cannabis products in the United States.

23.     Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

27.     Columbia Care cultivates, manufactures, and provides cannabis-based health and wellness solutions, and derivative products. It offers flowers, edibles, oils, and tablets under the Cannabist, Seed & Strain, Triple Seven, gLeaf, Classix, Press, Amber, and Platinum Label Cannabidiol brands. The company holds licenses in 18 jurisdictions in the United States and the European Union. As of January 3, 2022, it operated 131 facilities, including 99 dispensaries and 32 cultivation and manufacturing facilities. The company was founded in 2012 and is headquartered in New York, New York.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 12, 2021 Earnings Call announcing its 2021 Q3 financial results, the Company highlighted such milestones Record Quarterly Revenue of $132.3 Million, an Increase of 144% year over year as well as Record Adjusted Gross Margin of 49%.

29.     Speaking on these positive results, CEO Defendant Vita commented on the Company's positive results as follows, "We are pleased to report accelerating momentum and another record quarter for Columbia Care as fundamentals continue to improve and we execute on our national strategy," …. "With sequential revenue growth of over 20%, Columbia Care has continued to outpace the market while also maintaining margin discipline to achieve record company profitability, reflected in increased EBITDA margin and gross margin for the quarter."

30.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Columbia Care.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Columbia Care to enter into the Proposed Transaction without providing requisite information to Columbia Care stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     The Preliminary Proxy Statement is silent as to whether the committee created to run the sales process by the Board was composed of disinterested and independent members. Further, the Proxy statement fails to detail their specific powers.

34.     Additionally, the Preliminary Proxy Statement does not provide adequate reasoning as to why the Board agreed to a deal with no protective collar mechanism to ensure the all-stock merger consideration would remain in a realm of reasonableness, irrespective of Cresco's stock price on the day the deal closes.

35.     The Preliminary Proxy Statement also fails to address the need for the Company to have engaged multiple financial advisors, especially when each of ATB and Canaccord will receive significant compensation for their services rendered in this regard.

36.     Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Cresco and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

38.     On November 8, 2021, Columbia Care and Cresco issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CHICAGO--(BUSINESS WIRE)--**Cresco Labs (CSE:CL) (OTCQX:CRLBF) ("Cresco Labs" or the "Company") and Columbia Care Inc. (NEO:CCHW) (CSE:CCHW) (OTCQX:CCHWF) ("Columbia Care") announced today they have entered into a definitive arrangement agreement (the "Arrangement Agreement") pursuant to which Cresco Labs will acquire all of the issued and outstanding shares (the "Columbia Care Shares") of Columbia Care (the "Transaction"). Subject to customary closing conditions and necessary regulatory approvals, the Transaction is expected to close in the fourth quarter of 2022.
>
> Under the terms of the Arrangement Agreement, shareholders of Columbia Care (the "Columbia Care Shareholders") will receive 0.5579 of a subordinate voting share of Cresco Labs (each whole share, a "Cresco Labs Share") for each Columbia Care common share (or equivalent) held, subject to adjustment (the "Consideration") representing total consideration enterprise value of approximately US$2.0 billion based on the closing price of Cresco Labs Shares on the Canadian Securities Exchange (the "CSE") as of March 22, 2022. The Transaction provides Columbia Care Shareholders with premiums per Columbia Care Share of approximately 16% based on the closing prices of the Columbia Care Shares and

the Cresco Labs Shares, and (ii) 19%, based on the 20-day volume weighted average prices ("VWAP") of the Columbia Care Shares and the Cresco Labs Shares, each on the CSE as of March 22, 2022.

After giving effect to the Transaction, Columbia Care Shareholders will hold approximately 35% of the pro forma Cresco Labs Shares (on a fully diluted in-the-money, treasury method basis).

**Key Transaction Highlights and Benefits**

**Superior Market Access**

- Largest Multi-State-Operator ("MSO") by pro-forma revenue – Gives Cresco Labs the largest pro-forma revenue in cannabis today at over $1.4 billion.1
- Strategic, national footprint - Over 130 retail stores across an 18 market footprint,2 representing the #2 retail footprint in the industry, and the #1 retail footprint outside of Florida. The combined company will cover all 10 of BDSA's top-10 largest and fastest growing markets by 2025, representing approximately 55% of the U.S. population and over 70% of addressable cannabis market.
- Market share leader in key states – Independently, the companies currently have #1 share positions in four markets (IL, PA, CO, VA,), a #2 share in MA, and a pathway to a top-3 position in three more (NY, NJ and FL), bringing the combined company to a material market position in seven of the top 10 markets by revenue in 2025, according to BDSA.
- Exposure to adult-use upside – The combined company will have a meaningful presence in today's most influential markets and those with the biggest tailwinds for growth and adult use upside including: NY, NJ, VA, PA, OH, MD, and FL.

**Proven Capabilities in Wholesale and Retail**

- The industry's leading brand portfolio - #1 market share in the U.S. with strength in every major segment: #1 in branded flower, #1 in concentrates, #1 in vapes and top 5 in edibles, per BDSA.3
- Most productive retail banner – Cresco Labs' Sunnyside retail stores have average annualized revenue per store of over $11 million, the highest of any scaled national operator in the industry.
- Industry leading wholesale platform – Pro-forma Q4 2021 wholesale revenue of over $120 million, the highest in the industry.

**Balanced Economics**

- Increased scale and diversification – On a pro-forma basis, the Company expects to have annual revenues in excess of $100 million in 8 different states by 2023 as the combined company increases depth across other markets and diversifies its revenue base.
- Improved revenue mix - Increased retail revenue mix to 65% of total, from 47% today (for Cresco standalone), increasing vertical integration and scale to drive profitability improvement.
- Opportunity for synergies and de-levering – Ability to increase retail productivity, reduce redundant operational and capital expenses as well as de-lever the organization through the proceeds from the sale of redundant licenses and assets in high-value markets.

**Management Commentary**

"We are incredibly excited to announce this transformative transaction today at a very important time in the development of this industry. This acquisition brings together two of the leading operators in the industry, pairing a leading footprint with proven operational, brand and competitive excellence. The combination is highly complementary and provides unmatched scale, depth, diversification and long-term growth. On a pro-forma basis, the combined Company will be the largest cannabis company by revenue, the number one wholesaler of branded cannabis products, and the largest nationwide retail footprint outside of Florida," said Charles Bachtell, CEO of Cresco Labs. "The combination of Cresco Labs and Columbia Care accelerates our journey to become the leader in cannabis in a way no other potential transaction could. We look forward to welcoming the incredible Columbia Care team to the Cresco Labs family. I couldn't be more excited about this enhanced platform and how it furthers the Cresco Labs Vision – to be the most important and impactful company in cannabis."

"Since our founding, our mission has been to deliver the best outcome for our stakeholders," said Nicholas Vita, CEO of Columbia Care. "In an evolving industry, the opportunities to better achieve our mission through consolidation led us to this historic moment. With Columbia Care's strategic national footprint in the most attractive markets and Cresco Labs' success in execution and incredibly popular brands, we will together create the most important - and the most investable - company in cannabis. Getting to know Charlie, his team, and the culture at Cresco Labs has given me a high level of confidence in the ability to successfully integrate Columbia Care and maximize the tremendous value of the combined footprint."

**Terms of the Transaction**

The Transaction will be effected by way of a plan of arrangement pursuant to the Business Corporations Act (British Columbia). The Transaction has been unanimously approved by the Boards of Directors of each of Cresco Labs and

Columbia Care. Columbia Care Shareholders holding approximately 25% of the voting power of the issued and outstanding Columbia Care Shares have committed to enter into voting support agreements with Cresco Labs to vote in favor of the Transaction. After giving effect to the Transaction, Columbia Care Shareholders will hold approximately 35% of pro forma Cresco Labs Shares (on a fully diluted in-the-money, treasury method basis). The Consideration is subject to adjustment in the event that Columbia Care is required to issue shares in satisfaction of an earn-out payment for a prior acquisition, with the potential adjustment in proportion to the additional dilution from such potential issuance relative to Columbia Care's current fully diluted in-the-money outstanding shares. Additional details of the Transaction, including any adjustment to the Consideration, will be described in the management information circular and proxy statement (the "Circular") that will be mailed to Columbia Care Shareholders in connection with a special meeting of Columbia Care Shareholders (the "Meeting") expected to be held in the second quarter to approve the Transaction.

The Transaction has been unanimously approved by the Boards of Directors of each of Cresco Labs and Columbia Care. Columbia Care Shareholders holding approximately 25% of the voting power of the issued and outstanding Columbia Care Shares have committed to enter into voting support agreements with Cresco Labs to vote in favor of the Transaction. Certain Columbia Care Shareholders have also agreed to not transfer a significant portion of their resulting Cresco Labs Shares for up to an eight-month period following closing of the Transaction.

The Arrangement Agreement provides for certain customary provisions, including covenants in respect of non-solicitation of alternative transactions, a right to match superior proposals, a US$65 million termination fee payable to Cresco Labs under certain circumstances.

The Transaction is subject to, among other things, receipt of the necessary approvals of the Supreme Court of British Columbia, the approval of two-thirds of the votes cast by Columbia Care Shareholders at the Special Meeting, receipt of the required regulatory approvals, including, but not limited, approval pursuant to the Hart–Scott–Rodino Antitrust Improvements Act, and other customary conditions of closing. Approval of Cresco Labs Shareholders is not required. Additional details of the Transaction will be provided in the Circular.

**Recommendation of the Columbia Care Board**

The Board of Directors of Columbia Care (the "Columbia Care Board") has unanimously determined, after receiving financial and legal advice and following the receipt of a unanimous recommendation of a special committee of independent directors (the "Special Committee"), that the Transaction is in the best interests of Columbia Care, and that, on the basis of the Fairness Opinions (as defined herein), that the Consideration to be received by the Columbia Care Shareholders is fair, from a financial point of view, to the Columbia Care Shareholders.

The Columbia Care Board unanimously recommends that Columbia Care Shareholders vote in favor of the resolution to approve the Transaction. The Columbia Care Board obtained a fairness opinion from Canaccord Genuity Corp. ("Canaccord Genuity") and an independent fairness opinion from ATB Financial Markets Inc., (the "Fairness Opinions"), each which provide that, as at the date of such respective opinion and based upon and subject to the assumptions, procedures, factors, limitations and qualifications set forth therein, the Consideration to be received by the Columbia Care Shareholders pursuant to the Transaction is fair, from a financial point of view, to the Columbia Care Shareholders.

### Potential Conflicts of Interest

39.     The breakdown of the benefits of the deal indicate that Columbia Care insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Columbia Care.

40.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Preliminary Proxy Statement fails to provide an accounting of such amounts or the merger consideration which such shares will be exchanged for.

41.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Preliminary Proxy Statement fails to provide an accounting of such amounts or the merger consideration which such shares will be exchanged for.

42.     Moreover, certain employment agreements with certain Columbia Care executives, entitle such executives to severance packages should their employment be terminated under certain

circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, which is compensation not shared by Plaintiff. Notably, despite the Preliminary Proxy Statement discussing the existence of such agreements for at least three Company insiders, including Defendant Vita, no accounting of the consideration payable as a result of the exercise of these packages is provided.

43.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Columbia Care, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

45.     On May 2, 2022, the Columbia Care Board and Cresco caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up
to the Proposed Transaction*

46.    Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Specific information regarding whether the committee of the Board that was created to run the sales process was composed of independent and disinterested Directors, and if so, the specific powers of the committee;

b.   Adequate information as to why the Board engaged multiple financial advisors;

c.   Adequate information as to why the Board agreed to a deal with no protective collar mechanism;

d.   Whether the confidentiality agreements entered into by the Company with Cresco differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Cresco, would fall away; and

f.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Columbia Care and Cresco's Financial Projections*

47.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Columbia Care and Cresco provided by Columbia Care and Cresco management to the Board, ATB, and Canaccord and relied upon by ATB and Canaccord in their analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company and Cresco which are materially misleading.

48.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Columbia Care and Cresco management provided to the Board, ATB, and Canaccord. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

49.     Notably, the Preliminary Proxy Statement fails to disclose any projection information whatsoever for either Columbia Care or Cresco, disclose any of the specific material line items necessary to replicate the analyses done by either ATB or Canaccord.

50.     Without such information Plaintiff cannot determine the true value of the Company, or of the true value of the merger consideration, which is composed solely of Cresco stock.

51.   This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.   Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Golman Sachs', or Canaccord's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

### *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by ATB*

53.   In the Preliminary Proxy Statement, ATB describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.   With respect to the *Select Publicly Traded Companies Analyses*, the Preliminary Proxy Statement fails to disclose the following:

   a.   Regarding the *Columbia Care* Standalone section:

   i.   The specific metrics for each company compared;

   ii.   The specific inputs and assumptions used to determine the utilized multiple reference ranges of:

   1.   1.4x to 3.4x EV to CY2022E Revenue;

   2.   1.0x to 2.3x EV to CY2023E Revenue;

3. 4.1x to 11.1x EV to CY2022E EBITDA;

4. 2.7x to 7.5x EV to CY2023E EBITDA;

iii. The Company's CY2022E Revenue, CY2023E Revenue, CY2022E EBITDA and CY2023E EBITDA forecasts; and

iv. All specific projection metrics for the Company used to create this Analysis; and

v. The specific "Other factors" considered generally relevant in the analysis.

b. Regarding the *Cresco* Standalone section:

i. The specific metrics for each company compared;

ii. The specific inputs and assumptions used to determine the utilized multiple reference ranges of:

1. 2.3x to 3.6x EV to CY2022E Revenue;

2. 1.9x to 2.8x EV to CY2023E Revenue;

3. 6.1x to 12.2x EV to CY2022E EBITDA;

4. 5.1x to 8.6x EV to CY2023E EBITDA;

iii. Cresco's CY2022E Revenue, CY2023E Revenue, CY2022E EBITDA and CY2023E EBITDA forecasts; and

iv. All specific projection metrics for Cresco used to create this Analysis; and

v. The specific "Other factors" considered generally relevant in the analysis.

55.   With respect to the *Precedent Transaction Premiums Paid* section, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific Precedent Transactions to which the Proposed Transaction was compared;

    b.   The specific metrics for each precedent transaction analyzed;

    c.   The specific input used for the volume-weighted average prices of the Company and Cresco; and

    d.   The results of the analysis.

56.   With respect to the *Precedent Transaction Multiples Paid* section, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific Precedent Transactions to which the Proposed Transaction was compared;

    b.   The specific metrics for each precedent transaction analyzed;

    c.   The specific inputs and assumptions used to determine the utilized multiple reference range of 0.6x to 2.0x on an EV to one-year forward revenue basis; and

    d.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2.1x to 8.2x on an EV to one-year forward EBITDA basis.

57.   With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    c.   Regarding the *Columbia Care* Standalone section:

        vi.   The specific inputs and assumptions used to determine a range of discount rates of 12.0% to 14.0%;

vii.   The weighted average cost of capital for the Company;

viii.  The estimated future unlevered free cash flows of the Company utilized;

ix.   The Company's estimated terminal value;

x.   The specific utilized EV to CY2022E trading multiples reference range applied Company's projected terminal EBITDA and the inputs and assumptions used to determine this range;

xi.   The Specific stand-alone implied equity value ranges and implied per share price ranges for the Company.

d.   Regarding the *Cresco* Standalone section:

i.   The specific inputs and assumptions used to determine a range of discount rates of 11.0% to 13.0%;

ii.   The estimated future unlevered free cash flows of Cresco utilized

iii.   The weighted average cost of capital for Cresco;

iv.   The range of multiples used to estimate Cresco's terminal value and the specific inputs and assumptions used to determine them; and

v.   The Specific stand-alone implied equity value ranges and implied per share price ranges for Cresco.

58.   With respect to the *Has/Gets Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific value calculated for accretion/dilution on a per share basis;

b.   The number of fully diluted shares for the Company and Cresco;

c.   The range of implied equity values for the Company and Cresco;

    d.   The specific input used for the implied aggregate value of the pro forma equity; and

    e.   The potential value creation from anticipated annual cost synergies;

59.   With respect to the *Equity Research Price Targets*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific price targets utilized; and

    b.   The specific identity of the firms and/or analysts that created such price targets.

60.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

61.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Columbia Care stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Canaccord*

62.   In the Preliminary Proxy Statement, Canaccord describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

63.   With respect to the *Contribution Analysis*, the Preliminary Proxy Statement fails to

disclose the following:

    a.   The specific inputs used for revenue, and earnings before interest, taxes, depreciation and amortization;

    b.   The specific factors used when analyzing "certain other market capitalization parameters";

    c.   The specific research analysts estimates utilized;

    d.   The specific identity of the firms and/or analysts that created such estimates;

    e.   The specific input used for the volume-weighted average trading prices for both the Company and Cresco;

    f.   The specific price targets utilized; and

    g.   The specific identity of the firms and/or analysts that created such price targets.

64.    With respect to the *Comparable Companies Trading Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific companies compared;

    b.   The specific metrics for each company compared;

    c.   The specific inputs and assumptions used to determine the utilized multiple reference ranges of approximately 2.4x – 4.1x, 1.9x – 2.8x, and 1.3x – 2.4x to 2021 EV, 2022 EV, and 2023 EV, respectively;

    d.   The specific inputs and assumptions used to determine the utilized multiple reference ranges of approximately 9.2x – 26.0x, 6.6x – 14.3x, and 4.2x – 8.0x to 2021 EBITDA, 2022 EBITDA, and 2023 EBITDA, respectively

65.    With respect to the *Precedent Transactions Paid* section, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific private companies which Canaccord considered relevant to each of Columbia Care and Cresco; and

    b.   The specific metrics by which each company was compared.

66.   With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The financial projection metrics provided by both the Company and Cresco utilized in the analysis;

    b.   The specific discount rates calculated; and

    c.   The terminal values for the Company calculated.

67.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

68.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Columbia Care stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

69.   Plaintiff repeats all previous allegations as if set forth in full herein.

70.   Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

71.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

72.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

73.    The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

74.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

75.    The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

76.    The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

77.    Plaintiff repeats all previous allegations as if set forth in full herein.

78.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

79.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

80.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Columbia Care's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

81.     The Individual Defendants acted as controlling persons of Columbia Care within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Columbia Care to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Columbia Care and all of its employees. As alleged above, Columbia Care is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 9, 2022                              **BRODSKY & SMITH**

By:  _____
                                                Evan J. Smith
                                                240 Mineola Boulevard
                                                Mineola, NY  11501
                                                Phone:  (516) 741-4977
                                                Facsimile (561) 741-0626

                                                *Counsel for Plaintiff*

COMPLAINT